IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DAVID M. SHIPP, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:17-cv-03365-PX |
| ERIC HARGAN, | * | |
| Defendant. | * | |
| | *** | |

## MEMORANDUM OPINION

Pending before the Court is the motion to dismiss or in the alternative motion for summary judgment filed by then Acting Secretary of Health and Human Services, Eric Hargan (hereafter "HHS"). ECF No. 27. Plaintiff David Shipp has filed several pro se pleadings opposing the motion. ECF Nos. 29, 30, 32. Shipp has also filed a renewed motion to hold the case in abeyance (ECF No. 33) and a "legal and factual correction objection" and "renewal of motion for appointment of counsel, attorney fees and extension of time," ECF No. 37. Finally, although not styled as formal motions, the docket reflects Shipp's several requests and objections in various pleadings, including in his "response" to the Court's January 24, 2019 Memorandum Opinion. ECF No. 25. The Court now rules because no hearing is necessary. *See* D. Md. Loc. R. 105.6. Defendant's motion is granted. Shipp's motions and requests for relief are denied.

### I. Procedural Posture of the Case

In this discrimination case, Shipp contends that HHS refused to hire him in 2010 because of his race and in retaliation for his EEO activity concerning a prior termination from the Food and Drug Administration ("FDA") in 2006. *See* ECF No. 1 ¶ 26; ECF No. 16-2 at 24; ECF No. 33 ¶¶ 3–6; ECF No. 35 ¶ 25. This Court previously dismissed Shipp's claims regarding the 2006 firing because Shipp had not exhausted his administrative remedies. ECF No. 23 at 4–6. As to

his 2010 non-selection and retaliation claims, the Court granted Shipp a final opportunity to file an Amended Complaint. *Id.* at 6–7.[1]

Instead of amending the Complaint consistent with this Court's directive and the Local Rules, Shipp has papered this Court and HHS with eight pleadings totaling 177 pages in length. ECF Nos. 25, 26, 29, 30, 32, 33, 35, 37. Voluminous and often difficult to decipher, none of the pleadings include a properly-filed Amended Complaint. Rather, Shipp persists in litigating his 2006 claims. *See, e.g.*, ECF No. 25 ¶¶ 9–45, ECF No. 35 ¶¶ 12–77. Shipp also requests "sanctions" against HHS for various forms of perceived misconduct. *See, e.g.*, ECF No. 37. Shipp additionally objects to several of the Court's previous rulings and resurrects claims that this Court has already denied. *See* ECF Nos. 37, 25-1. The Court turns to each of the pending motions.

## II. HHS's Motion for Summary Judgment

### A. Standard of Review

HHS argues that the Court may treat its motion to dismiss as one for summary judgment because no dispute of material fact exists on the administrative record, ECF No. 27-1 at 2, 12–13, which is extensive and appears to include all of the relevant and available documentation from HHS's hiring process, *see* ECF Nos. 27-2, 27-3. The Court may review the motion as one for summary judgment in the absence of formal discovery if the nonmoving party has been "given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "Where a party knows, however, that materials outside the pleadings are before the court, that party is considered to have notice that the motion to dismiss may be treated as a motion for summary judgment." *Nat'l Mortg. Warehouse, LLC v. Trikeriotis*, 201 F. Supp. 2d

---

[1] This Court has directed Shipp to file an Amended Complaint in accordance with the Local Rules on two separate occasions. *See* ECF No. 11; ECF No. 23 at 6–7.

499, 502 (D. Md. 2002). Indeed, where the non-moving party submits materials beyond the Complaint, the Court may infer that the non-movant consents to treat the motion as one for summary judgment. *See id.*

Federal Rule of Civil Procedure 56(d) requires any party who opposes treating the motion as one for summary judgment to submit via declaration the "specified reasons" for needing additional factual development or otherwise put the Court on notice of the reasons why summary judgment is premature. *See* Fed. R. Civ. P. 56(d); *see also Harrods, Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). The facts identified by way of a Rule 56 affidavit "must be essential to [the] opposition." *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (internal citation and quotation marks omitted), *rev'd on other grounds sub nom.*, *Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013). But where "additional evidence sought for discovery would not have by itself created a genuine issue of material fact," the Court may treat the motion as one for summary judgment. *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995).

Shipp argues vaguely that more discovery is required but does not point to any specific evidence to be sought. ECF No. 29 ¶ 1; ECF No. 33 at 20. Although Shipp complains of the inadequacies in the EEO's investigation, ECF No. 33 at 20, 24, 29, he does not identify what additional facts discovery may unearth, and at times, agrees that discovery cannot cure defects in the record, ECF No. 1 ¶ 25; ECF No. 32 at 4.[2] Any deficiencies in the first EEO investigation

---

[2] Certain documentation is not included in HHS's records, ECF No. 27-3 at 51–53, 66–67, 69, 78–79, 82, 247, 256, and HHS could not locate the missing documentation during the EEO investigation despite the ALJ's directive to perform a comprehensive search, ECF No. 27-3 at 27–29. Shipp, at points, seems to argue that this missing documentation supports the need for formal discovery. ECF No. 29 ¶ 1; ECF No. 33 at 20. The Court disagrees insofar as nothing in the record suggests that the missing information could or would be found some seven years after the administrative investigation if formal discovery in this Court were to proceed. Alternatively, because the record evidence viewed most favorably to Shipp demonstrates that none of the decisionmakers at the time of the selection had received Shipp's final application or knew his race or about his protected activity, ECF No. 27-3 at 80–81, 88–89, 93, 101–02; *see id.* at 192–98, any missing documentation, even if found, would not undermine this

3

also have been addressed by supplemental investigation that augmented the record even further. *See* ECF Nos. 27-3 at 26–29. Shipp has also submitted evidence beyond the four corners of his Complaint. Accordingly, because the Court cannot discern what additional relevant evidence may be generated were additional discovery to proceed, and Shipp has availed himself of the opportunity to supplement the record, the Court will treat this motion as one for summary judgment.

The Court should grant summary judgment when, construing all evidence and drawing all reasonable inferences in the light most favorable to the non-moving party, it finds no genuine dispute exists as to any material fact, thereby entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In responding to a proper motion for summary judgment, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him or her." *Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835, 840 (D. Md. 2004), *aff'd sub nom., Venugopal v. Shire Labs., Inc.*, 134 F. App'x 627 (4th Cir. 2005) (per curiam) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Celotex*, 477 U.S. at 322–23).

Importantly, the non-moving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). Additionally, the party "'may not rest upon the mere allegations or denials of [his] pleadings,'

---

uniform and unequivocal testimony.

but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)).

### B. Summary Judgment Facts

It is undisputed that Shipp previously worked for the FDA as a GS-12 chemist and was terminated in 2006. ECF No. 27-1 at 1; ECF No. 27-2 at 37. Shipp applied in 2010 for a GS-9 chemist position in the FDA. ECF No. 27-2 at 15, 39–40. The FDA established two similar but separate application procedures for this position. Those applicants with current or prior federal service could submit applications through a "merit promotion program," as set out in FDA announcement 0030. ECF No. 27-3 at 51–52, 76–77. All other applicants could submit their applications through the procedures set forth in announcement 0029. *Id.* at 51–52, 76. HHS was free to hire from either pool of applicants. *See id.* at 76–77.

Both announcements required the applicant first to create an online federal resume at USAJobs. *Id.* at 178, 186. The online resume sought basic biographical information, a summary of prior work experience, and some information as to educational background. *See id.* at 192–95. Next the applicant had to answer an online questionnaire regarding prior experience in the relevant field. *Id.* at 178, 186–87; *see id.* at 196–98. The third and final step required the applicant to use a fax form generated by HHS at the completion of step two to fax supporting documentation. *Id.* at 179–80, 187.

The instructions made plain that "all applicable supplemental application material must be received at the appropriate fax number, shown on the fax sheet, by 11:59 PM Eastern Time on the closing date," December 23, 2010. *Id.* at 179–80, 186–87. Both announcements instructed applicants to submit transcripts. *Id.* at 180, 188. For those with current or prior federal

5

experience, announcement 0030 directed such applicants to submit a SF-50 on which an applicant would detail his prior federal service. *Id.* at 188. Failure to submit the information by fax would result in the applicant's disqualification in part because HHS's application software at the time, QuickHire, could not accept attachments to emails. *Id.* at 53–54.

In early December 2010, Shipp began the application process for the GS-9 chemist position under both 0030 and 0029 announcements by creating his USAJobs resume and submitting the online questionnaire. ECF No. 27-2 at 15. In the online resume for announcement 0030 under the heading "EDUCATION," Shipp listed "Florida Southern University, Lakeland, FL." ECF No. 27-3 at 193.

On December 14, 2010, Shipp emailed the HHS online help desk called "ERIC" under the subject heading "Announcement HHS-FDA-2011-0030." *Id.* at 208. Shipp asked for permission to submit his transcript and SF-50 via email instead of fax. *Id.* Shipp's email message to ERIC read in its entirety:

> Because additional applications previously submitted by me should be under careful consideration for other vacancy announcements, my college transcripts and Standard Form (SF) 50 are already on file within the HHS and FDA; I do not believe that I would have sufficient funds to fax in duplicate copies of my college transcripts and SF-50 by the closing date of 12/23/2010, but will shortly afterwords [sic]; therefore, I have attached duplicate copies of my college transcripts and SF-50 and I request special permission to substitute the attached college transcript and SF-50 for the duplicate faxed documents before the closing date so that I can learn my consideration status with the required documents as presented; additionally, I have attached an updated resume to more accurately reflect my experience as it related to this particular job announcement. Sincerely, David M. Shipp.

*Id.*

Resource Information Specialist Anthony Graves responded the same day. *Id.* at 207. Graves told Shipp to "[p]lease be sure you included the appropriate fax coversheets that go along

6

with the fax coversheets." *Id.* Graves did not explicitly address whether Shipp could email instead of fax his transcripts and SF-50. *Id.*

Shipp responded to Graves' email:

> I've attached a copy of the fax coversheets, but I'm a little confused about your message; right now, I don't have sufficient resources to fax additional copies of the documents which I attached to my last email (e.g. college transcript and SF-50); Can I have special permission to submit the attached documents via the email submission which I previously made concerning the attached documents?

*Id.* Graves responded, "the fax coversheet does not belong to you, your name is not on this fax coversheet. I need your fax coversheet from your profile with your name on it." *Id.* at 206. Shipp again followed up, explaining how he obtained the fax coversheet that he had sent in his earlier email. *Id.* Shipp also asked if he should "go through the questionaire [sic] again and get a new fax cover sheet." *Id.* Shipp claims that after he sent this final email message, he "received an automated email message acknowledging receipt of a completed application package." ECF No. 27-2 at 40. However, the records on file with HHS do not include any evidence of confirmation that Shipp's completed package was ever received.

On December 15, 2014, Shipp received a voicemail from Customer Service Specialist, Maria Gonzalez. *Id.* at 40. According to Shipp, Gonzalez told him she had received his application materials and asked him to call her back. *Id.* Shipp emailed Graves again, stating that:

> I just received a voicemail left by Marie [sic] Gonzalez at (301) 492-4566, on the evening of 12/15/2010 in relation to receiving my resume, college transcripts, and SF-50 (and possibly application), which she referred to as documents; she appeared to be unaware of who my application material should be directed to; this application is for a position within CFSAN, a location that I also want consideration for Announcement Number: PH-DG-392978-DE/MP, which I want to be considered; she requested that I return her phone

7

> call, but I would like you to inform her that I will be unable to place the long distance call until up to three business days after 12/23/2010, due to a likely processing delay by my bank in relation to a deposit which will be directed to my bank on about 12/23/2010. Please inform her that I will return her phone call soon after 12/23/2010.

ECF No. 27-3 at 206. By the time Shipp called Gonzalez back, she had moved to another position and, in Shipp's words, "appeared to be unaware of what she'd done with the documents that formed [Shipp's] application package." ECF No. 27-2 at 40. Accordingly, no evidence exists that Shipp faxed his SF-50 and transcripts. At best, Shipp appears to have emailed these documents to ERIC. *See* ECF No. 27-2 at 39–40; ECF No. 27-3 at 208.

Gonzalez had no memory of either communicating with Shipp or handling his application materials. ECF No. 27-3 at 72–73. According to Gonzalez, applicants for various positions would sometimes mistakenly fax their materials to ERIC instead of the designated fax number. *Id.* at 73. When this happened, Gonzalez would typically pass the materials along to Graves, who would then send these materials to the appropriate HR department. *Id.* Gonzalez surmises that perhaps because she was transitioning to a different job in December 2010, if Shipp had emailed the documents to ERIC, Gonzalez may have left any faxed application documents on her desk for her replacement to give to Graves. *Id.*

Graves similarly attested that he had no recollection of having received Shipp's application materials from Gonzalez or Shipp. *Id.* at 82–83. Further, Graves did not remember forwarding any of Shipp's materials to either of the persons responsible for evaluating applications for the two announcements. *Id.* at 83. Nor does the record include a transcript or SF 50 for Shipp. Consequently, no evidence supports that Graves had any knowledge of Shipp's race or prior EEO activity in 2006. *Id.* at 79–80.

Once the applications were submitted consistent with the above directions, HHS treated

8

the applications as follows. For announcement 0029, HR Specialist, Pat Gorman, "rated" each applicant based on the information provided in the online questionnaire. *Id.* at 46–48. This rating process yielded a point total ranging from 0 to 100. *Id.* at 47–48. Gorman then used this score to place the applicants into four categories: Best Qualified, Well Qualified, Qualified, and Not Qualified. *Id.* Department policy set the cutoff for the Well Qualified group at 85. *See id.* at 47 & n.2. However, Gorman retained discretion to adjust the cutoff score for the Best Qualified group. *Id.* at 47 & n.2, 49. After rating the applicants, Gorman only forwarded 13 of the Best Qualified applicants to the Recommending Official for the vacancy, Naomi Richfield-Fratz. *Id.* at 93. Shipp had been rated Well Qualified, so he was not among the Best Qualified applicants forwarded. *Id.* at 57, 129. No information in the questionnaire or resume provided to Gorman any indication of Shipp's race or prior EEO activity. *Id.* at 192–98.

For announcement 0030, HR Specialist Vernon Davis reviewed the applications and produced a "certificate of eligibles," or a list of candidates qualified for consideration by the selecting official. *Id*. at 85–86. The applications included a questionnaire identical to that used in announcement 0029. *Id.* at 49, 52–53. However, most of the documents related to this announcement appear to have been lost during the transition from one document processing vendor (QuickHire) to another (USA Staffing). *Id*. at 50. For this applicant pool, any candidate with a score of 85 or higher and a completed application would be included in the certificate of eligibles. *Id.* at 86.

Only one candidate appears to have been on the certificate of eligibles for announcement 030, and his questionnaire score was lower than Shipp's. *Id*. at 93; *compare id.* at 196–98 *with* 204–05. Davis attested, however, that he never saw any of Shipp's application materials. *Id.* at 86–87. Further, Davis affirmed that he was not aware of Shipp's race or his prior EEO activity.

9

*Id.* at 88–89. Davis then forwarded the certificate to Richfield-Fratz. *See id.* at 93.

Richfield-Fratz reviewed the application materials from both applicant pools and chose whom to interview. *Id.* at 95–96. Based on the applications and interviews, Richfield-Fratz then recommended a candidate for hire to the Selecting Official, Raymond Decker. *Id.* at 96. During this process, Richfield-Fratz did not know the race of any applicants. *Id.* at 96–97. Although Decker held the final authority on whether to hire an applicant, he simply "signed off" on Richfield-Fratz's recommendation. *Id.* at 101. Richfield-Fratz also attested that because she had never reviewed any of Shipp's materials, she had no way of knowing Shipp's race or about his prior EEO activity. *Id.* at 93, 95–97.

Richfield-Fratz ultimately recommended Samuel White, an announcement 0029 applicant, because of his prior experience in analytical chemistry at a pharmaceutical company. *Id.* at 93–94. Richfield-Fratz first learned that White was Caucasian at his in-person interview. *Id.* at 96–97. Based on Richfield-Fratz's recommendation, Decker hired White. *Id.* at 101. Decker had no information about Shipp or that he had applied for the chemist position. *Id.* at 101–02.

After Shipp was not selected, he lodged a formal complaint with HHS's EEO Office. ECF No. 22 ¶¶ 92–93; *see* ECF No. 16-2 at 20–26. The EEO conducted an initial investigation which the presiding administrative law judge (ALJ) found inadequate. ECF No. 27-3 at 26–29. HHS then secured a contract investigator to supplement the record as directed by the ALJ. *Id.* at 38. After this investigation, HHS determined that it had not discriminated against Shipp in the hiring process. ECF No. 16-2 at 6; *see* ECF No. 35 ¶ 20. Shipp next appealed to the EEOC, which affirmed HHS's determination in 2017. *See* ECF No. 1-2 at 1; *see also Clifford L.*, EEOC Decision No. 0120151065, 2017 WL 1354012, *1 (Apr. 5, 2017) (EEOC appeal under

pseudonym). Shipp then proceeded to file suit in this Court, alleging that HHS discriminated against him on the basis of race and in retaliation for prior EEO activity. ECF No. 1 ¶ 26; *see* ECF No. 25 ¶ 28; ECF No. 33 ¶¶ 3–6; ECF No. 35 ¶ 25.

### C. Analysis

Shipp contends that he was not selected for the GS-9 Chemist position on account of his race and in retaliation for his 2006 EEO activity. The Court addresses each claim in turn.

#### i. Discrimination

Pursuant to Title VII, an employer may not refuse to hire a qualified individual based on his "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Where, as here, no direct evidence of discrimination exists, courts apply the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 278 (4th Cir. 2000). Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998). That is, the plaintiff must demonstrate: "(1) he is a member of a protected group; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Id.* Critically, "discriminatory intent cannot be inferred, even at the *prima facie* stage, from circumstances unknown to the defendant." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 82–83 (2d Cir. 2005); *cf. Gladden v. Locke,* No. PJM 10-1756, 2011 WL 2619570, at *5 (D. Md. June 30, 2011) (declining to apply *McDonnell Douglas* and finding no discrimination where defendant was unaware of applicant's race), *aff'd sub nom., Gladden v. U.S. Dep't of Commerce*, 474 F. App'x 947 (4th Cir. 2012), *cert. denied*, 568 U.S. 992 (2012).

If a plaintiff establishes a *prima facie* case, the burden next shifts to the employer to

11

supply a legitimate, non-discriminatory reason for the plaintiff's non-selection. *See Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). The burden then shifts back to the plaintiff to demonstrate that the proffered legitimate reason for non-selection is mere pretext for discrimination. *See id.*; *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 852 (4th Cir. 2001). Although the framework "involves a shifting back and forth of the evidentiary burden, [the] [p]laintiff, at all times, retains the ultimate burden of persuading the trier of fact that the employer discriminated [against him] in violation of" the law. *Venugopal*, 334 F. Supp. 2d at 841.

HHS argues that Shipp failed to make out a *prima facie* case because no evidence exists that HHS knew of Shipp's race at the time his application was excluded from final consideration. Because Shipp attempted to email instead of fax his application, HHS did not receive information necessary to render Shipp eligible for consideration. ECF No. 27-1 at 15–16, 20. Thus, says HHS, no decision maker knew Shipp's race when they declined to offer him the position. *Id.* Alternatively, HHS contends that no evidence exists that HHS's stated reason for not hiring—Shipp's incomplete application—is pretextual. *Id.* at 19–21.

At the outset, the Court finds that the record includes some evidence that Shipp emailed his application materials to ERIC. *See* ECF No. 27-3 at 129, 192–98, 206–08. However, the record does not reflect that the materials ever made their way to Graves, the individual whom Shipp had emailed about his application, or Gorman or Davis, the HR specialists responsible for scoring the applicants for the 0030 and 0029 announcements respectively. Both Graves and Davis testified that each had no recollection of receiving or processing Shipp's application. *Id.* at 78–80, 86–87, and no evidence exists that Gorman had received Shipp's completed package.[3]

---

[3] Although Gorman is not available, the record evidence reflects that Shipp was rated Well Qualified, not best Qualified, and so would not have been forwarded for consideration in any event. ECF No. 27-3 at 129.

Accordingly, summary judgment must be granted in HHS's favor because even considering the record most favorably to Shipp, no reasonable factfinder could conclude that he was not selected on account of race.

Similarly, even if Shipp could somehow establish a *prima facie* case of discrimination, no evidence demonstrates that HHS's proffered reason for non-selection was pretextual. HHS has maintained throughout that Shipp was not selected first because he failed to submit a completed application and second because he was not among the Best Qualified candidates from which the finalist was chosen. ECF No. 27-1 at 17–18. Shipp argues in response that Gonzalez received his full application, ECF No. 32 at 24, can point to nothing to support this claim. As already discussed, the record at best suggests that Shipp sent his application to ERIC. But this was not the designated method by which to apply, and there is nothing on this record to suggest that Gonzalez (or anyone else for that matter) received the required transcript or SF-50.[4] Thus, no reasonable factfinder could determine that HHS's stated reason for non-selection was pretextual.

Throughout his many pleadings, Shipp posits several theories as to how the relevant decisionmakers could have learned of his race. None are supported by the record. Shipp claims that a decisionmaker may have learned of Shipp's race through his personnel file. ECF No. 35 ¶ 42. No record evidence, however, even hints that any of the relevant actors had access to this file. Shipp similarly argues that HHS would have inferred his race because his transcripts reflect attendance at an historically black institution, Tuskegee University. ECF No. 25 ¶ 28. However, his online questionnaire did not list Tuskegee but rather Florida Southern University, and Shipp's

---

[4] Shipp attaches a screenshot of a 2011 email to two of his pleadings to the EEO investigator. ECF No. 30-1 at 1–2; ECF No. 35-1 at 1, which suggest Shipp received confirmation from HHS when he submitted his application. However, the emails do not permit the inference that Graves, Davis, Ritchfield-Fratz, or any other decision maker actually received Shipp's transcript or SF-50.

13

academic transcripts are not in the record. ECF No. 27-3 at 193. Thus, no evidence exists that any of the decisionmakers knew Shipp's race during the application process. Likewise, as to announcement 0029, no evidence exists that Gorman received Shipp's transcripts from any source. The record is simply devoid that the proffered reason for Shipp's non-selection was a pretext for his race. Accordingly, the Court must grant summary judgment as to the discrimination claim in HHS's favor.

### ii. Retaliation

Shipp's retaliation claim fares no better. Shipp is correct that employers may not refuse to hire a candidate because he has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a). The Court applies the same *McDonnell Douglas* burden-shifting framework to retaliation claims. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 248–49 (4th Cir. 2015). To sustain a retaliation claim, the plaintiff must demonstrate: (1) that he engaged in protected activity; (2) the employer took an adverse employment action against him; and (3) a causal link exists between the two. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). Analogous to discrimination claims, "the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F. 3d 653, 657 (4th Cir. 1998).

HHS does not dispute that Shipp previously had engaged in protected activity. Nor does it dispute, as it cannot, that Shipp was turned down for the G-9 chemist position. Rather, HHS rightly points out that the record is devoid of any causal relationship between the two. ECF No. 27-1 at 19–20. This is because none of the HHS decision makers in the 2010 selection knew of Shipp's prior EEO activity. Graves, Davis, Richfield-Fratz, and Decker all testified had no idea

14

that Shipp had engaged in prior EEO activity. ECF No. 27-3 at 80, 89, 93, 96–97, 101. Additionally, nothing in Shipp's application materials refer to his prior EEO claims. Thus, summary judgment in HHS's favor is warranted.

Shipp's responses—which border on incoherent and are scattered across his many pleadings—amount to mere speculation. Shipp supposes that HSS may have contacted his references who then told the decision makers of his prior EEO activity. ECF No. 33 at 4, 24. But no record evidence suggests this actually took place, and no one involved in the selection process testified to knowing about Shipp's past activity. Similarly, Shipp posits again that perhaps the selecting officials had access to his personnel file. ECF No. 33 at 5, 17. But again, Shipp does not support this claim with evidence as opposed to mere speculation. Because no evidence exists to support that those responsible for filling the 2010 chemist position knew of Shipp's protected activity, Shipp's retaliation claim must fail. Summary judgment is granted in HHS's favor.

### III. Shipp's Motions

Although the Court grants summary judgment in HHS' favor on all claims, Shipp's motions, as styled, are not necessarily mooted and must be addressed. The Court reviews each separately.

#### A. Sanctions

Shipp repeatedly asks that the Court impose "sanctions" against HHS. *See, e.g.*, ECF Nos. 29 ¶¶ 18–19; ECF No. 33 at 22; ECF No. 37 ¶ 1. Shipp's requested sanctions include appointing an attorney to represent Shipp, ECF No. 25 ¶ 3, ECF No. 37 ¶ 1; declining to consider evidence or drawing "adverse inferences" against HHS, ECF No. 25 ¶ 24; "enjoining" HHS from seeking summary judgment, ECF No. 35 ¶ 94; and granting him a default judgment. ECF No. 29 ¶ 25. Shipp maintains that sanctions are justified because of HHS's "deleterious conduct" and

puts forward unsubstantiated allegations that HHS communicated *ex parte* with this Court, tampered with witnesses, and conducted a shoddy investigation. ECF No. 25 ¶¶ 12, 20; ECF No. 25-1 ¶ 8, ECF No. 29 ¶ 23; ECF No. 33 at 19–20, 25–26; ECF No. 35 ¶¶ 9–11. Shipp has given this Court no reason to sanction HHS, and the Court cannot discern any from the record. Further, this Court cannot sanction HHS, as Shipp urges, for failure to comply with underlying EEO administrative procedures. *See Mallik v. Sebilius*, 964 F. Supp. 2d 531, 538 (D. Md. 2013) (no authority supporting that "a *federal district judge* has the power to issue sanctions . . . for an agency's failure to comply with EEOC procedures or prevent abuse in of the EEOC's administrative proceedings." (emphasis in original)). Thus, Shipp's sanctions motion is denied.

B.     **Motion to Reconsider**

Shipp's disagreements with the Court's dismissal of his 2006 claims will be construed charitably as motions for reconsideration under Federal Rule of Civil Procedure 59(e). Reconsideration is warranted "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). "[I]f a party relies on newly discovered evidence in its Rule 59(e) motion, the party must produce a legitimate justification for not presenting the evidence during the earlier proceeding. In general, reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.* (internal citations and quotation marks omitted). A motion for reconsideration is not designed to afford an opportunity to relitigate simply because a party is dissatisfied with the Court's determination. *Regan v. City of Charleston*, 40 F. Supp.3d 698, 702 (D.S.C. 2014).

Shipp vigorously contends that the Court misapprehends the relief that he sought. ECF

No. 25-1 ¶¶ 28, 31–39.  Shipp argues that he now wishes for the Court to order his reinstatement pursuant to the terms of a 2006 settlement agreement he had reached with HHS.  *See, e.g.*, ECF No. 22 ¶ 106; ECF No. 25-1 ¶¶ 35–36.  Putting to the side that the plain language of the 2006 settlement agreement does *not* provide for his reinstatement, ECF No. 22 ¶ 34, even if it had, the Court has been given no permissible basis to reconsider its prior ruling.  The motion is denied.

Lastly, Shipp asks the Court to reconsider appointing Shipp counsel.  *See* ECF No. 37 ¶ 1.  Chiefly, Shipp argues that the Court misunderstood the legal basis for his request and clarifies that he was asking for counsel as a sanction for HHS's "deleterious conduct."  ECF No. 37 ¶¶ 1, 12.  Shipp also states that he has spoken with two attorneys about his case but cannot afford their retainer fees.  *Id.* ¶¶ 6–9.  Unfortunately, it is Shipp who misapprehends the standard for appointing counsel.  Appointment of counsel does not operate as a sanction.  Nor is it warranted in this instance, as Shipp has been given ample opportunity to put his claims before this Court and the Court has awarded summary judgment to HHS, thus concluding Shipp's case on the merits.  Accordingly, Shipp's motions for reconsideration are denied.

**IV.     Conclusion**

For the foregoing reasons, HHS's motion to dismiss is granted.  ECF No. 27.  Shipp's motions are denied.  A separate Order follows.


3/27/2020  
Date

/s/  
Paula Xinis  
United States District Judge